SHELTON ET AL., APPELLANTS, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Shelton v. Indus. Comm. (1976),
51 Ohio App. 2d 125.]

(No. 75AP-464—Decided April 20, 1976.)

*Messrs. O'Brien & Bauer,* for appellants.
*Mr. William J. Brown,* attorney general, and *Mr. Gene Holliker,* for appellees.

McCORMAC, J. On March 14, 1975, appellants, Glen E. and Barbara E. Shelton, filed a complaint in the Court of Claims against the Bureau for the Prevention of Industrial Accidents and Diseases of the Industrial Commission of Ohio, the Industrial Commission of Ohio, the Division of Boiler Inspection and the Division of Workshops and Factories, alleging that these state agencies were negligent in the performance of their statutory duties to make various inspections and investigations. Appellants alleged that as a result of the negligence of appellees an inherently dangerous condition was permitted to exist at the Northern Ohio Sugar Company, a sugar processing plant where appellant Glen E. Shelton worked, and that defendants knew or should have known of the inherently dangerous condition. Appellants allege that as a result thereof an accident occurred, apparently an explosion of a boiler, rendering Glen E. Shelton blind, burning him over ninety per cent of his body and totally disabling him. The demand was for damages in the sum of $3,500,000. Appellees filed a motion to dismiss for a failure to state a claim upon which relief could be granted.

The Court of Claims entered judgment in favor of the appellees, holding that the state agencies involved did not owe a duty of care to appellants sufficient to give rise to a claim for negligence. Appellants have filed a timely notice of appeal, setting forth the following assignments of error:

"1. To sustain a motion to dismiss for failure to state a claim under Ohio Rules of Civil Procedure Rule 12 (B) (6) there must be on the face of the complaint no set of facts which might permit recovery for the plaintiff.

"2. The state of Ohio has waived immunity from suit for governmental functions requiring the exercise of discretion.

"3. Even if the state of Ohio has not waived immunity from suit for governmental functions requiring the exercise of discretion, the acts complained of herein do not fall within the scope of such exception.

"4. The defendant-appellee state agencies in this case owed a legal duty to the plaintiffs-appellants sufficient to state a cause of action for negligence."

The assignments of error will be discussed together as they are interrelated.

Plaintiffs' claim is based on an alleged breach of duty on the part of various governmental agencies to perform statutory duties of inspection of places of employment, boilers, etc., and enforcement of safety standards for the protection of an employee who works at that place.

Examples of statutes setting forth duties of the agencies who are named as defendants are listed below.

R. C. 4123.17 provides, in relation to the duties of the Bureau for the Prevention of Industrial Accidents and Diseases, in relevant part, as follows:

"* * * The superintendent of the bureau for the prevention of industrial accidents and diseases, under the direction of the commission, shall conduct investigations and researches for the prevention of industrial accidents and diseases, and shall print and distribute such information as may be of benefit to employers and employees. * * *"

As such relate to the Industrial Commission, the following duties are set forth in R. C. 4121.13, as follows:

"(A) Investigate, ascertain, and declare and prescribe what hours of labor, safety devices, safeguards, or other means or methods of protection are best adapted to render the employees of every employment and place of employment and frequenters of every place of employment safe, and to protect their welfare as required by law or lawful orders * * *

"(B) Ascertain and fix such reasonable standards and prescribe, modify, and enforce such reasonable orders for the adoption of safety devices, safeguards, and other means or methods of protection to be as nearly uniform as possible as may be necessary to carry out all laws and lawful orders relative to the protection of the life, health, safety, and welfare of employees in employments and places of employment or frequenters of places of employment;

"(C) Ascertain, fix, and order such reasonable standards for the construction, repair, and maintenance of places of employment as shall render them safe * * *."

As defined in R. C. 4121.01, "place of employment"

is an expansive term which includes almost every conceivable place of business, commerce or employment in the state.

The Division of Boiler Inspection has the statutory duty to inspect all power boilers, high pressure boilers and low pressure boilers. R. C. 4104.11.

The Division of Workshops and Factories has the duty of inspecting as follows:

R. C. 4107.06:

" * * * [T]he sanitary conditions, system of sewerage, situation and condition of water closets, system of heating, lighting, and ventilating rooms where persons are employed at labor, and the means of exit in case of fire or other disaster, within or connected with such shops or factories. He shall examine the belting, shafting, gearing, drums, and machinery in and about such shops and factories, and see that they are not so located as to be dangerous to employees when engaged in their ordinary duties, and, so far as practicable, securely guarded. He shall see that each vat, pan, or structure filled with molten metal or hot liquid is surrounded by proper safeguards for preventing accident or injury to persons employed at or near them."

In summary, the defendant agencies are given broad responsibilities for inspection and establishment of safety standards relating to virtually every place where business, commerce or employment is carried on in the state. Appellants' contention is that a breach of these duties, either by a failure to inspect or prescribe acceptable safety standards, or in failing to ascertain or correct unsafe conditions which result in injury to an employee such as Glen E. Shelton, makes the state liable for those injuries. In this particular case, the state has been sued for $3,500,000 for very tragic injuries to an employee who was injured apparently through a boiler explosion. If the General Assembly has clearly provided for liability for the failure of the defendant agencies to effectively carry out statutory duties of inspection and promulgation of safety duties, a claim is stated, notwithstanding the fact that a "floodgate of litigation" may bankrupt the state. In order to ascertain whether such is the case, it necessary to examine carefully the ap-

propriate provisions of R. C. Chapter 2743, where the state has partially waived its immunity from suit.

The pertinent section is R. C. 2743.02 (A), which provides, as follows:

"The state hereby waives its immunity from liability and consents to be sued and have its liability determined in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *."

Unfortunately, there is no legislative history to interpret what the General Assembly meant when the state was made liable in accordance with the same rules applicable to suits between private parties. Obviously, if the General Assembly intended the state to be subject to the enormous liability that a favorable ruling to appellants would create, it is not up to this court to second-guess them on a public policy basis.

There are two possible comparative laws that may be used to guide this court in its interpretation of the aforequoted provision. The first, and that advocated primarily by appellants, are provisions of the Federal Tort Claims Act, Title 28, U. S. Code, Section 2674, *et seq*. However, upon an analysis of the waiver of immunity in the Court of Claims Act, contained in R. C. 2743.02, it is found to be significantly different than that set forth in the Federal Tort Claims Act, which is, therefore, not a valuable resource in determining the meaning of the language used by the General Assembly. On the other hand, a number of other states have waived immunity from suit, using language practically identical to R. C. 2743.02(A). Examples are the New York Court of Claims Act,[1] Section 8, Article 2, and, in the state of Washington, Wash. R. C. Anno. 4.92.090. Appellants, in their brief, concede that in at least 17 states there are or have been such enactments similar to that of Ohio where the provisions have been judicially interpreted as exempting the sovereign from liability in certain respects. While some legal writers, *i. e.*, Davis on Administrative

---

[1] N. Y. Judiciary—Court Acts.

Law,[2] have criticized the courts for engrafting limitations upon the liability of the state, it does not appear that the statutes which the courts are called upon to interpret are as clear and unequivocal as some would contend.

Both Washington and New York have rejected claims for injuries based upon the state's failure to perform safety inspections or enforce safety standards in interpreting similar statutes. See *Young* v. *State* (1951), 278 App. Div. 997, 105 N.Y.S. 2d 657, affirmed 304 N. Y. 677, 107 N. E. 2d 594; *Loger* v. *Washington Timber Products, Inc.* (1973), 8 Wash. App. 921, 509 P. 2d 1009.

The crucial language to be interpreted is liability in accordance with the same rules of law applicable to suits between private parties. Private parties are not liable for injuries to another based on negligence unless they have breached a duty owed to that person. *Stamper* v. *Parr-Ruckman Motor Sales* (1971), 25 Ohio St. 2d 1. Since the requirement of a duty owed to plaintiff is one of the rules of law applicable to suits between private parties, it is also applicable to suits against the state. The Court of Claims Act does not create *new* duties, it only provides a remedy for existing duties where the state was previously immune from suit and a private party under similar circumstances would have been liable.

Construing that provision broadly, one could say that private parties who have a duty to inspect and to enforce safety standards are liable for their negligence in failing to do so and, hence, the state should be liable. Construing that provision more narrowly, one could say that a private party's duty to inspect and to enforce safety standards is not created by statute, but only by virtue of some other legal relationship and, hence, there is no rule of law making a private party liable for a failure to perform statutory duties of inspection and enforcement of safety standards which were enacted to protect the health, safety and welfare of all of the citizens of Ohio.

The latter interpretation, in our opinion, is correct.

---

[2]Davis, Administrative Law Treatise 455, Section 25.06 (1958).

Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty toward any particular person. Likewise, their performance or nonperformance cannot be the basis of a tort action by an injured person.

Furthermore, it should be noted that, if the General Assembly disagrees with the judicial interpretation of the actual language used, there is nothing to prevent it from making clear and unequivocal the intent to abolish immunity in any respect desired, however broad that may be and whatever effects it may have upon the financial condition of the state and the amount of taxes which citizens must pay for claims created by an unlimited waiver of liability. Most courts have properly taken the position that the actual language used, when not clear, should be construed reasonably—not as guardians of the public treasury, but to at least make sure that before the public treasury is emptied that the result was intended by the legislature.

Since appellants' claim is based upon the negligent failure of the state agencies to inspect places of business or boilers and to enforce safety standards, appellants have failed to state a claim upon which relief can be granted. There is no set of facts which can be proved to support liability under the allegations of the complaint, as no duty upon which a claim for negligence can be predicated is owed to the appellants.

Appellants' assignments of error are overruled and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and REILLY, J., concur.